

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

**ENTERED**
**04/04/2008**

| | | |
|---|---|---|
| IN RE: | § | |
| **JOSE LUIS GOMEZ,** *et al* | § | **CASE NO: 07-70348** |
| Debtor(s) | § | |
| | § | **CHAPTER 13** |
| | § | |
| **JOSE LUIS GOMEZ,** *et al* | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 07-7018** |
| | § | |
| **KAMPER INVESTMENTS, LLC,** *et al* | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION

For the reasons set forth below, the Court awards legal title to the property at issue in this dispute to Jose Luis Gomez and Esmeralda Gomez. The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157.

### *Background*

On August 7, 2007, the home of Jose Luis Gomez and Esmeralda Gomez ("Debtors") was purportedly foreclosed on by Wells Fargo Bank ("Wells Fargo") and purchased by Kamper Investments, LLC ("Kamper"). The following day, Debtors filed for chapter 13 bankruptcy relief. Debtors filed an adversary proceeding against Kamper and Wachovia Bank[1] asserting that legal title to the property never transferred, seeking to avoid any alleged transfer of the property and bringing claims for wrongful foreclosure, deceptive trade practices, intentional infliction of mental distress, breach of common law duty to perform with care, skill and experience, conversion and wrongful eviction, breach of contract, and negligence. Debtors also moved for a temporary restraining order to prevent forcible detention from the property.

---

[1] Wells Fargo Bank, N.A. serves as the mortgage servicers for Wachovia Bank, National Association, as Trustee for WFASC Mortgage Asset-Backed Pass-Through Certificates, Series 2005-2.

A hearing was held on the temporary restraining order on September 27, 2007.  The Court denied the temporary restraining order on the basis that the offered affidavits were inadequate to support the requested relief.  Debtors filed an amended request for a temporary restraining order.  The Court held a hearing on October 11, 2007 and granted the relief.  A subsequent scheduling conference was held on November 20, 2007.  At that hearing, the parties agreed that only questions of law remained as to the Debtors' complaint.  Therefore, upon agreement of the parties, the Court closed the evidentiary record and granted the parties leave to submit post-hearing briefs on the remaining issues of law.

On December 3, 2007, Debtors filed an amended complaint dropping all of their previous causes of action except for a request for a declaratory judgment that legal title of the property never transferred, or, in the alternative, a claim to avoid the transfer pursuant to 11 U.S.C. § 522(h) and 544(a)(3).  Wells Fargo responded and asserted that regardless of whether the sale can be avoided, Debtors are barred by 11 U.S.C. § 1322(c)(1) from curing and maintaining this debt.  After consideration of the evidence and the parties' briefs, the Court now issues its final ruling as to the avoidance of the foreclosure sale and transfer of Debtors' property.

### *The Foreclosure Sale*

The facts of the foreclosure sale are not in dispute.  The Debtors' homestead property was purchased by Kamper at the foreclosure sale conducted by Wells Fargo on August 7, 2007.  There are no allegations that the sale was not properly conducted in accordance with state law.  Debtors argue, however, that legal title never passed to Kamper because a substitute trustee's deed was not prepared or delivered to Kamper at the time of Debtors' bankruptcy filing.   The delivery of a substitute trustee's deed, Debtors assert, is a requirement for title to transfer.

In Texas, the legal and equitable interests in property are severed when a deed of trust is executed.  *Flag-Redfern Oil Co. v. Humble Exploration Co.*, 744 S.W.2d 6, 8 (Tex. 1987).  Upon execution, the mortgagor retains legal title while the mortgagee gains equitable title.  *Id.*

For any interest in real property to be transferred, the conveyance must be "in writing, signed by the grantor, and delivered to the grantee."  *Adams v. First Nat'l. Bank of Bells/Savoy*, 154 S.W.3d 859, 569 (Tex. App.-Dallas 2005, no. pet. h.) (citing TEX. PROP. CODE ANN. § 5.021 (Vernon 2003)).  "A conveyance is effective and title is transferred when the following has occurred: (1) execution of the deed, and (2) delivery of the deed."  *Id.* (citing *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261 (Tex. 1974)).  "Two elements must be established to prove delivery of a deed: (1) the deed must be delivered into the control of the grantee, and (2) the grantor must intend the deed to become operative as a conveyance."  *Id.* (citing *Binder v. Snyder*, 189 S.W.2d 471, 475 (Tex. 1945)).  "What constitutes a delivery is a question of law," *Id.* (citing *Ragland v. Kelner*, 221 S.W.2d 357, 359 (1949)), but whether there has been a delivery is a question of fact.  *Id.* (citing *Ragland*, 221 S.W.2d at 359)).  While much litigation has examined the intent of the grantor, there is little dispute that "[t]o consummate a delivery, the deed must be placed in the hands of the grantee, or within his control."  *Raymond v. Aquarius Condominium Owners Ass'n., Inc.*, 662 S.W.2d 82, 91 (Tex. App. 13 Dist. 1983, n.w.h) (citing *Jones v. Young*, 539 S.W.2d 901, 904 (Tex. Civ. App.-Texarkana 1976, writ ref'd n.r.e.)).

The parties do not dispute that a substitute trustee's deed was never prepared and delivered.  At the foreclosure sale, Kamper received a form entitled Buyers Receipt for Funds and Acknowledgement and Substitute IRS Form 8300.  The face of the receipt, however, defeats

any claim that it may substitute for delivery of a deed.  It states clearly that "[t]itle does not transfer until delivery of the Substitute Trustee's deed."  Wells Fargo Exh. 10.

The law is clear.  For an interest in real property to be conveyed, it must be in writing, signed and delivered.  *Adams* 154 S.W.3d at 569 (citing TEX. PROP. CODE ANN. § 5.021 (Vernon 2003)).  No deed was delivered and the buyer's receipt prevents transfer of legal title until the deed is delivered.  Accordingly, the Court finds that legal title did not transfer.  The homestead remains property of the bankruptcy estate.  *See* 11 U.S.C. § 541(a) (property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case.").

## 11 U.S.C. § 1322

Wells Fargo argues that regardless of the transfer of title, Wells Fargo's claim must be paid in full during the term of the plan pursuant to 11 U.S.C. § 1322(c)(1).  Section 1322(c)(1) provides:

> a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b)[2] until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law.

11 U.S.C. § 1322(c)(1).  The meaning of the phrase "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law" is subject to varying interpretation throughout the federal courts.  Courts disagree on whether this phrase references the simple act of the foreclosure auction or whether this phrase refers to some moment beyond the foreclosure auction where all of the mortgagor's potential rights have expired.

---

[2] Subsection (b)(3) provides for the curing or waiving of any defaults.  Subsection (b)(5) provides for the cure of any default and maintenance of payment on claims where the late payment is due after the final payment is due under the plan.

Wells Fargo cites to the Third Circuit case of *In re Connors*, to support its position that the phrase refers only to the foreclosure auction.  497 F.3d 314 (3rd Cir. 2007).  *In re Connors*, decided August 2007, addressed a split (described by the Court as a "virtual tie")[3] among the New Jersey federal courts as to whether "under 11 U.S.C. § 1322(c)(1), a Chapter 13 debtor has the right to cure a default on a mortgage secured by the debtor's principal residence between the time the residence is sold at a foreclosure sale and the time the deed is delivered."  *Id.* at 317.  The Court held this right does not exist.  *Id.*

In *Connors*, on November 10, 2004, after defaulting on his mortgage note, Debtor's property was sold at a foreclosure sale.  *Id.*  Debtor filed bankruptcy on November 14, 2004.  On January 19, 2005, after Debtor's state law redemption rights had expired, the purchaser of the property at the foreclosure sale filed a motion to lift the stay to allow it to pay the balance due on the property and receive the deed.  *Id.*  The Bankruptcy Court granted the motion and the District Court affirmed.  *Id.*  The District Court held that "the right to cure expires at the foreclosure sale and § 1322(c)(1) only allows additional remedies as available under state law."[4] *Id.* at 317-18.

The Third Circuit affirmed, finding that "foreclosure sale" in § 1322 references a discreet event rather than the entire foreclosure process.  *Id.* at 319-20.   Although in *Connors,* Debtor had allowed his state law redemption rights to expire, the Court noted that its holding would not otherwise cut off the "debtor's state-law post-sale remedies."  *Id.* at 321.  The Court based its

---

[3] One line of cases held that a debtor has a right to cure the default "only until the gavel falls at a foreclosure sale" while the other line held that "a residence is not 'sold' within the meaning of § 1322(c)(1), and the debtor has the right to cure a default, until the deed is delivered to the winning bidder."  *Connor*, 497 F.3d at 318-19 (see cases cited therein at fn 1 & 2).

[4] In New Jersey, Debtor had a statutory right to object to the foreclosure or to redeem within 60 days of his bankruptcy petition. *Connor*, 497 F.3d at 317 (citing N.J. Ct. R. 4:65-5; 11 U.S.C. § 108(b)).  Debtor failed to exercise this statutory right.  *Id.*

finding on what it considered the unambiguous language of the statute and the practice of the local courts, rules and statutes of referring to foreclosure "sale" to mean the single event of the foreclosure auction rather than the entire foreclosure proceeding including delivery of the deed. *Id.* Further, the Court noted that in New Jersey the "successful bid at a foreclosure auction is generally irrevocable… and the bidder acquires equitable title that is not subject to defeasance except under narrow circumstances." *Id.* at 320 (internal citation omitted). *Id.* at 320. Accordingly, regardless of redemption rights, the Court found a residence is "sold" at the foreclosure auction even if legal title has not been transferred.[5] *Id.* at 321 (citing *In re Townsville*, 268 B.R. 95, 118-19 (Bankr. E.D. Pa. 2001)).

The Sixth Circuit, applying Michigan law, has likewise found "a foreclosure sale" in § 1322(c)(1) unambiguously refers to a discreet event. *In re Cain*, 423 F.3d 617 (6th Cir. 2005). The Court granted a creditor's objection pursuant to § 1322(b)(1) when the Debtor filed bankruptcy after the foreclosure sale, but prior to the time his state law rights of redemption had expired. *Id.*. The Sixth Circuit noted that "the deed acquired by a purchaser at a Michigan foreclosure sale does not become operative until the running of the redemption period, see §§ 600.3232 and 600.3236, but a delay in the time when the deed becomes fully effective simply does not equate to a delay in the time of sale." *Id.* at 320 (citing MICH. COMP. LAWS §§ 600.3216, 600.3220). Quoting *In re Crawford*, 232 B.R. 92 (Bankr. N.D. Ohio 1999), the Court held that "§ 1322(c)(1) terminates a debtor's right to cure a home mortgage default 'when the gavel comes down on the last bid at the foreclosure sale.'" *Id.* (quoting *Crawford*, 232 B.R. at 96).

---

[5] The Court stated, "[a]lthough delivery of the deed conveys legal title, *[In re] Randall*, 263 B.R. [200,] 203 [(D.N.J. 2001)], the delivery itself has been described as 'a ministerial act, routinely performed, which does not affect the redemption rights of the parties.'" *In re Connors*, 497 F.3d 314, 320-21 (3rd Cir. 2007) (quoting *Ziyambe*, 200 B.R. 790, 796 (Bankr. D.N.J. 1996)).

The Tenth Circuit Bankruptcy Appellate Panel, applying Wyoming law, has also found that the language of § 1322(c)(1) is unambiguous and that the deadline for a debtor's right to cure a mortgage default cuts off at the time of the foreclosure sale regardless of state law redemption periods. *In re McCarn*, 218 B.R. 154 (10th Cir. B.A.P. 1998). The Panel noted that even if it found the statute ambiguous and resorted to considering how to interpret "sold" under Wyoming law, it would not change its holding. *Id.* In Wyoming, a foreclosure sale does not have to be confirmed by a court. Accordingly, the Panel found that "on the date of the foreclosure sale, the substantive rights of the parties are fixed: the mortgagor retains legal title until the expiration of the three-month redemption period set forth in Wyoming Statutes Ann. § 1-18-103(a), and the mortgagee obtains a lien on the property that, by operation of law, converts into legal title at the expiration of the redemption period. Wyo. Stat. Ann. § 1-18-102." *Id.* at 161-62. The Panel rejected the argument that a right to redeem should expire before a sale may be considered complete. *Id.* at 162; *But see In re Faulkner*, 240 B.R. 67 (Bankr. W.D. Okla. 1999) (distinguishing *McCarn* and finding that a debtor could cure a default under § 1322 where under Oklahoma law, unlike Wyoming, confirmation is required to complete a foreclosure sale).

Proponents of allowing a debtor the right to cure, find the statute ambiguous and look to the legislative history of § 1322 for guidance. The House Report states:

> Until the Third Circuit's decision in *Matter of Roach*, 824 F.2d 1370 (3d Cir. 1987), all of the Federal Circuit Courts of Appeal had held that such right continues at least up until the time of the foreclosure sale. The *Roach* case, however, held that the debtor's right to cure was extinguished at the time of the foreclosure judgment, which occurs in advance of the foreclosure sale. This decision is in conflict with the fundamental bankruptcy principle allowing the debtor a fresh start through bankruptcy.
>
> This section of the bill safeguards a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults at least *through completion of a foreclosure sale* under applicable nonbankruptcy law. However, if the State provides the debtor more extensive "cure" rights (through, for example, some

later redemption period), the debtor would continue to enjoy such rights in
bankruptcy.

H.R. REP. NO.103-835, at 52 (1994) (emphasis added, footnotes omitted).  Several courts have

looked to this passage and have interpreted the language "through completion of a foreclosure

sale" to reference not just the moment of the foreclosure auction, but rather the entire process of

foreclosure.  Specifically, courts look to the state provided rights and find that a sale is not

completed until the debtor's right of redemption under state law has expired.  *See e.g. In re*

*Taylor*, 286 B.R. 275 (D. Vt. 2002) (finding that "the operative date of the 'foreclosure sale'

specified in Section 1322(c)(1) is the date on which all of the debtor's rights in the subject

property are extinguished, including rights of redemption.").  As most courts have noted,

however, the legislative history is far from conclusive and appears contradictory itself.  Indeed,

Judge Morgenstern-Clarren in the *Crawford* opinion pointed to the comments of Senator

Grassley which seem to show that a bright-line rule was intended to cut off the point to allow a

debtor to cure at the date of the foreclosure sale:

> MR. GRASSLEY: Title III of the bill will assist homeowners. Some homeowners
> attempt to prevent their homes from being foreclosed upon, even though a
> bankruptcy court [sic; should read state court] has ordered a foreclosure sale.
> There may be several months between the court order and the foreclosure sale.
> Section 301 [now § 1322(c)(1)] will preempt conflicting State laws, and permit
> homeowners to present a plan to pay off their mortgage debt until the foreclosure
> sale actually occurs.

*In re Crawford*, 232 B.R. at 97 (citing 40 CONG. REC. S14462 (daily ed. Oct. 6, 1994) (statement

of Sen. Grassley)).

When faced with this issue, the Seventh Circuit cautiously examined this legislative

history and concluded that "Congress wanted to leave to the states the right to fix the outer limits

of the right to redeem." *Colon v. Option One Mortgage Corp.*, 319 F.3d 912, 918 (7th Cir. 2003).

The Court, considering Illinois law, turned to an evaluation of state law to define what should be

considered a "completed" foreclosure sale.  Initially, the Court noted that courts in Illinois in determining whether there should be a denial of confirmation of a foreclosure sale, hold that "a judicial sale is not complete until it has been approved by the trial court."  *Id.* at 919 (citing *Citicorp Savs of Ill. v. First Chicago Trust Co. of Ill.*, 645 N.W. 2d 1038, 1045 (1995)). However, despite this seemingly conclusive definition of a "completed sale", the Court examined the statutory scheme surrounding foreclosure sales and found that in most cases, a mortgagor's right to redeem expires prior to the foreclosure sale, and as such, allowing a debtor to cure a default until the time of the confirmation would expand a debtors remedies beyond that as provided in Illinois law.[6]  *Id.*

The Court held that because a mortgagor's right to redeem usually expires prior to the foreclosure sale, the debtor is not allowed to cure through § 1322(c)(1) when bankruptcy is filed after the redemptive rights have expired, but prior to the state court confirmation of the sale.  *Id.* The Court noted that "after the completion of the judicial sale, assuming that the redemption period has run, the purchaser at the sale has a presumptive right to eventual ownership of the property. . ."  *Id.* at 921.  At least one other bankruptcy court within the Seventh Circuit has applied *Colon* and found that a debtor does have a right to cure based on that State's redemptive rights which did not expire until after the foreclosure sale.  *In re Wescott*, 309 B.R. 308 (Bankr. E.D. Wis. 2004) (examining Wisconsin redemption rights and finding that where redemption rights extend up to 12 months after the sheriff's sale, a debtor who files bankruptcy after the sheriffs' sale, but before the redemption rights have run may cure through § 1322(c)(1)).

Yet other courts have found that § 1322(c)(1) does not preclude the debtor from curing a default when the foreclosure auction has occurred, redemption rights have expired, but the sale

---

[6] The Illinois property code provides "that a judicial sale shall be held upon expiration of all statutory redemption rights."  *Colon*, 319 F.3d at 920 (citing 732 ILCS 5/15-1507(b)).

has not been judicially confirmed.  *In re Brown*, 282 B.R. 880, 882-83 (Bankr. E.D. Ark. 2002).

In *Brown*, after examining the legislative history of § 1322 the Court noted that "[u]nder

Arkansas law, a judicial foreclosure sale is complete upon confirmation of the sale by the court."

*Id.* (citing *Dellinger v. First Nat'l Bank*, 970 S.W.2d 223, 225 (1998)); *In re Faulkner*, 240 B.R.

67 (Bankr. W.D. Okla. 1999)

The common theory throughout these Circuit Court cases is that the expiration of a

Debtor's redemption rights pursuant to state law greatly dictates what is considered "complete"

under the state law.  In Texas, a mortgagor does not have redemption rights beyond the time of

the actual foreclosure sale.  *Scott v. Dorothy B. Schneider Estate Trust*, 783 S.W.2d 26, 28 (Tex.

App.-Austin 1990, n.w.h.) (citing *Willis v. Smith*, 17 S.W. 247, 248 (1886)) ("one must assert his

equity of redemption before a foreclosure sale because the equity of redemption terminates once

a foreclosure sale occurs.").  Also in Texas, a sale under a deed of trust is not subject to a

requirement of judicial confirmation.  *See e.g.* TEX. PROP. CODE § 51.002.

There is one case in Texas addressing the "completeness" of a foreclosure sale when the

trustee's deed is not delivered:  *Peterson v. Black*, 980 S.W.2d 818 (Tex. App.-San Antonio

1998, no pet. h.).  In *Peterson*,[7] the Court held that the failure to record a trustee's deed does not

make a foreclosure sale incomplete.  *Id.* at 822 (citing *Simonds v. Stanolind Oil & Gas Co.*, 114

S.W.2d 226, 235 (1938)).  The Court stated, in dicta, "the sale [under the deed of trust] was

complete when the foreclosure was conducted in accordance with the law and with the

provisions of the deeds of trust and [the substitute trustee] accepted [the purchaser's] bid."  *Id.*

The Court based its finding on two principles: (1) "[a] sale in accordance with the law and the

---

[7] In *Peterson,* the foreclosure sale occurred on November 5, 1996, but the deed was not delivered to the purchaser until "a few days before" January 20, 1997. *Peterson,* 980 S.W.2d.at 820.  The deed was dated November 5, 1996, but notarized on January 15, 1997.  A suit was filed against the purchaser prior to January 15, 1997.  *Id.* at 821.

provisions of a deed of trust transfers equitable title to the purchaser in the absence of a deed"
*Id.* (citing *Pioneer Bldg. & Loan Ass'n v. Cowan*, 123 S.W.2d 726, 730 (Tex. Civ. App. Waco
1938, writ dism'd judgm't cor.)); and (2) "the failure to record a written deed does not divest the
purchaser of title."  *Id.* (citing *Simonds*, 134 S.W.2d at 235).

The foreclosure sale in this proceeding was conducted pursuant to the power of sale
provision within the deed of trust.[8]  This power in Texas has been described as follows:

> The power of the trustee to sell the deed for the parties is derived wholly from the
> trust instrument. *Winters v. Slover,* 151 Tex. 485, 251 S.W.2d 726, 728 (1952).
> Because a power of sale under a deed of trust is a harsh method of collecting
> debts and of disposing of another's property, it can only be exercised by strict
> compliance with the note and conditions of sale. *Crow v. Heath,* 516 S.W.2d 225,
> 228 (Tex.Civ.App.-Corpus Christi 1974, writ ref'd n.r.e.). Thus, a trustee must
> strictly pursue the terms of the instrument, the provisions of law relative to such a
> sale, and the details prescribed as to the manner of the sale. *See Durkay v. Madco
> Oil Co.,* 862 S.W.2d 14, 17 (Tex.App.-Corpus Christi 1993, writ denied);
> *Randolph v. Citizens Nat'l Bank,* 141 S.W.2d 1030, 1032 (Tex.Civ.App.-Amarillo
> 1940, writ dism'd judgm't cor.).

*Bonilla v. Roberson*, 918 S.W.2d 17 (Tex. App.-Corpus Christi 1996, rehearing overruled).  In
the Second Amended Complaint, Plaintiffs make no allegations that the auction did not comply
with the requirements of the Texas Property Code and the deed of trust.  Accordingly, if the sale
was completed, Debtor's redemption rights have expired and there are no alleged defects in the
foreclosure sale that would allow the sale to be set aside under state law.

At the sale, however, the purchaser tendered the purchase price in the form of cashier's
checks[9] and, rather than a trustee's deed, received a form titled "Buyers Receipt for Funds and
acknowledgement and Substitute IRS Form 8300".  The form provides for the name of the
debtor, a property description, the time of sale and amount of sale, the amount tendered, and the

---

[8] As provided for in the Texas Property Code § 51.002.

[9] Texas Property Code § 51.0075(f) states: "The purchase price in a sale held by a trustee or substitute trustee under
this section is payable immediately on acceptance of the bid by the trustee or substitute trustee.  The trustee or
substitute trustee shall disburse the proceeds of the sale as provided by law."

buyer information and signature and date.  It also provides that the purchase is "at buyer's risk" and that the sale is subject[10] to certain conditions.

At the foreclosure sale, Kamper purchased the property subject to the following conditions as set forth in the Buyers Receipt:

1. Any statutory or court ordered restraint of the sale arising out of bankruptcy, pending litigation, receivership, or other legal proceedings involving any person who claims a legal or equitable interest in the property.

2. The death or initiation of a probate proceeding of Debtor(s), or any person who claims a legal or equitable interest in the property.

3. Reinstatement or payoff of the loan secured by the property or any other presale arrangement to satisfy the default.

4. Any matter which may affect the validity of any element of the foreclosure process or foreclosure sale or act as a defense or bar to the foreclosure process.

5. In the event of an overpayment of the bid price, all refunds will be made by the Mortgagee.  The Substitute Trustee is not responsible for any refunds.

6. In the event a defect or other problem with the foreclosure sale is discovered, the purchase price paid by the Buyer will be returned to the Buyer within a reasonable time after verification of the pertinent facts, and the return of the funds shall be the Buyer's sole and absolute remedy.

7. A Substitute Trustee's Deed will be prepared and recorded by the law firm after the funds tendered have been paid by the issuing bank, usually within 8 business days of the sale.  A copy of the deed is NOT available prior to the time that your cashier's check(s) have been paid.  Refunds will not be processed until verification with the bank that the funds have been paid.

8. Title does not transfer until delivery of the Substitute Trustee's Deed; any direct activity with the property or Substitute Trustee is at Buyer's risk.

9. Any changes made to these exceptions and conditions are not valid unless initialed by the Substitute Trustee.

---

[10] The Texas Property Code provides that setting conditions is within the trustee's providence: "A trustee or substitute trustee may set reasonable conditions for conducting the public sale if the conditions are announced before bidding is opened…"  TEX. PROP. CODE § 51.0075(a).

As set forth above, condition eight states, "[t]itle does not transfer until delivery of the Substitute Trustee's Deed; any direct activity with the property or Substitute Trustee is at Buyer's Risk."   As also set forth above, legal title did not transfer to Kamper at the moment of the sale.

Condition eight, however, does not limit itself to legal title only.  It simply states "title". It is unclear whether this condition was intended to prevent transfer of legal *and* equitable title until delivery of the deed.  *Peterson* is based, in part, on the theory that "[a] sale in accordance with the law and the provisions of a deed of trust transfers equitable title to the purchaser in the absence of a deed."  *Peterson*, 980 S.W.2d at 822 (citing *Pioneer Bldg. & Loan Ass'n* 123 S.W.2d at 730).  Accordingly, if neither legal nor equitable title had transferred to Kamper at the time of Debtors' bankruptcy filing, this sale could not fall within the definition of "complete" pursuant to *Peterson*.

Generally, "[a]n entity holds equitable title when it possesses the present right to compel legal title."  *Harris County Appraisal Dist. v. Primrose Houston 7 Housing, L.P.*, 238 S.W.3d 782, 787 (Tex.App.-Houston [1 Dist.] 2007, pet. filed) (citing *TRQ Captain's Landing L.P. v. Galveston Cent. Appraisal Dist.*, 212 S.W.3d 726, 732 (Tex. App.-Houston [1 Dist.] 2006, pet. granted)).  The Court, therefore, must examine whether Kamper, at the moment of Debtors' bankruptcy filing, had the ability to compel legal title.

It is Wells Fargo's duty to demonstrate that Kamper had the ability to compel title when Debtors filed for bankruptcy.  The Court finds that Wells Fargo has not met its burden. Specifically, the Court finds that Wells Fargo has not overcome the implications of conditions one, four, seven and eight and the effect these conditions have on Kamper's ability to compel legal title.

Most notably, the Court finds that condition seven prevents Kamper from having the ability to compel legal title.  Texas Courts generally hold that an obligation under an agreement is enforceable when a check is certified.  *See E.P. Towne Cent. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W. 3d 117, 124 (Tex. App.-El Paso, 2007, no pet. h.) (citing TEX. BUS. & COM. CODE ANN. § 3.310(b)(1); *Probus Props v. Kirby*, 200 S.W.3d 258, 262 (Tex. App.-Dallas 2006, pet. denied)) ("an obligation due under an agreement is suspended until the check is dishonored or until it is paid or certified.").  However, the parties to this agreement specifically agreed otherwise.  Condition seven contains a clear prerequisite to preparing the trustee's deed: the deed will be prepared and recorded only "after the funds tendered have been paid by the issuing bank".  Accordingly, although cashier's checks had been delivered at the time of the bankruptcy filing, there was no obligation to prepare a trustee's deed.  Without an obligation to prepare and deliver the deed, the Court finds that Kamper lacked the ability to compel legal title at the moment of the filing of Debtors' bankruptcy petition.

The Court also finds that conditions one and four affect the ability for Kamper to compel.  On Debtors' bankruptcy filing, a bankruptcy estate was formed.  Section 541 of the Bankruptcy Code provides that property of the estate includes, with some exceptions, "all legal or equitable interest of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Estate property is then protected by the automatic stay which enjoins actions to*, inter alia*, obtain possession of "property from the estate".  11 U.S.C. § 362(a)(3).

Condition one makes the sale subject to a statutory restraint arising out of bankruptcy "involving any person who claims a legal or equitable interest in the property."  Debtors undoubtedly claimed a legal or equitable interest in the property at the moment of the bankruptcy filing.  Therefore, not only is this property, "property of the estate" and subject to the statutory

14

restraint of the automatic stay, it is also property in the possession of the estate to which the statutory restraint independently applies.    Furthermore, if Kamper moved to perfect any rights in the property, such act may be found in violation of the automatic stay and voidable, thus affecting the possible validity of an element of the foreclosure process as referenced in condition four.  *See Pico v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990) (citing *Sikes v. Global Marine Inc.*, 881 F.2d 176 (5h Cir. 1989) ("actions taken in violation of an automatic stay are not *void*, but rather … merely *voidable*…").

The Court has already discussed the ambiguity in condition number eight.  Wells Fargo has not presented evidence to show condition eight is limited to legal title only.  Accordingly, the Court finds that Kamper did not have the power to compel delivery of the deed at the time when Debtors filed for bankruptcy.  Kamper, therefore, did not possess equitable title and the sale was not complete.

### Avoidance of the Transfer Pursuant to § 544

In addition to requesting a declaratory judgment that legal title did not transfer, Debtors request that the foreclosure sale be avoided under § 544(a)(3).  Section 544(a)(3) provides that a Trustee[11] may avoid "any transfer of property of the debtor… that is voidable by—"

> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer].

11 U.S.C. § 544(a)(3).  The Fifth Circuit in *In re Hamilton* considered Debtor's use of this power to avoid a prepetition foreclosure sale transfer of Debtor's homestead.  125 F.3d 292 (5th Cir.

---

[11] Although § 544 provides that this avoidance power belongs to the "Trustee", the Fifth Circuit has held that 11 U.S.C. § 522(h) allows a Chapter 13 debtor to exercise this avoidance power in certain circumstances.  *In re Hamilton*, 125 F.3d 292, 298 (5th Cir. 1997). The Court, quoting *In re Elam*, found that § 522(h) "specifically grants a debtor standing to avoid certain involuntary transfers of exempt property."  *Id.* (quoting *In re Elam*, 194 B.R. 412, 415 (Bankr. E.D. Tex. 1996)).

1997).  Citing the Texas Property Code, the Court stated that a "conveyance of an interest in real property, including a deed of trust, is void as to a subsequent purchaser if the interest was not recorded at the time of the subsequent purchase and the purchaser paid valuable consideration without notice of the unrecorded interest."  *Id.* at 298-99 (citing TEX. PROP. CODE. ANN. § 13.001(a)).  The Court found that "[u]nder Texas law, a hypothetical purchaser would gain good title to [debtor's] property after it was sold at a valid foreclosure sale but before the substitute trustee's deed was recorded, unless the purchaser had notice of the foreclosure sale."  *Id.* at 299 (citing TEX. PROP. CODE. ANN. § 13.001(a)).  Notice of a foreclosure sale sufficient to satisfy the property code may be either constructive or inquiry notice.  *Id.*

Constructive notice is "notice given by properly recorded instruments and charged to a person as a matter of law, regardless of the person's actual knowledge."  *Id.* (citing *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981)).  Because the substitute trustee's deed was not recorded, a hypothetical purchaser, as a matter of law, could not be charged with constructive notice in this proceeding.

Inquiry notice is "triggered by notice of facts that would put a reasonably prudent person on a duty of inquiry" that the property was sold at a valid foreclosure sale.  *Id.* (citing *Woodward v. Ortiz*, 237 S.W.2d 286, 289 (1951)).  The Court, therefore, must examine whether a hypothetical purchaser at the moment of the bankruptcy filing would have had notice that the property was subject to Kamper's purchase.

As set forth above, at the moment the bankruptcy petition was filed, Kamper lacked both legal and equitable title.  The foreclosure sale was not complete.  At most, Kamper may have possessed a contract right to purchase the property contingent on future events.  Had inquiry been made, the hypothetical purchaser would have learned that the purported foreclosure sale

16

was subject to the nine conditions set forth in the Receipt and reached the same conclusions this Court has reached: the sale was not complete.  Accordingly, the Court finds that a bona fide purchaser, at the moment of the bankruptcy filing, would not have had notice that the property had been *sold* at a valid foreclosure sale.  A hypothetical purchaser would have gained good title to the property.  The sale is avoided.

### *Conclusion*

For the forgoing reasons, the Court finds that Kamper did not posses equitable title and, pursuant to *Peterson,* the foreclosure sale was not "complete".  Section 1322(c)(1) does not apply.  The Court finds that the foreclosure sale is avoided pursuant to § 544(a)(3).  A separate judgment will issue.

Signed at Houston, Texas, on April 3, 2008.

MARVIN ISGUR
United States Bankruptcy Judge